**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JENNIFER L. F.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>*Commissioner of Social Security*,<br><br>Defendant. | Civil Action No. 25-1126 (JXN)<br><br>**OPINION & ORDER** |

**NEALS, District Judge**

Before the Court, pursuant to Section 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), is Plaintiff Jennifer L. F.'s[1] ("Plaintiff") application for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 404–34, *et seq*. Plaintiff appeals from the Commissioner of Social Security's ("Commissioner") final decision denying her application. After carefully considering the entire record, including the administrative record, the Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

On April 28, 2021, Plaintiff went to the emergency room for depression and suicidal ideation. (Tr. at 293.[2]) Two days earlier, Plaintiff cut her left wrist. (*Id.*) She also reported hearing

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] References to "Tr. _" are to pages of the record filed with the Court and certified by the Social Security Administration on July 31, 2025.

voices for at least two months. (*Id.*) Neither Klonopin nor Lexapro helped Plaintiff's symptoms. (*Id.*) She tearfully stated, "I hear voices in my head that know personal things because they are going through my phone." (*Id.* at 296.) The hospital admitted Plaintiff for observation. (*Id*. at 295.)

A psychiatrist[3] observed Plaintiff as tearful, distressed, dysphoric, and internally preoccupied. (*Id.* at 299.) Plaintiff's thought processes were slowed, and her depression had been worsening despite taking her prescribed medication. (*Id.*). Plaintiff told the psychiatrist she had "derogatory auditory hallucinations." (*Id.*) In the preceding months, Plaintiff slept poorly and felt guilt, shame, poor energy, difficulty concentrating, racing thoughts, and poor appetite. (*Id.* at 299–300.) Plaintiff also felt impulsive, emotionally labile, hypervigilant, irritable, anxious, on edge, and tearful. (*Id.* at 300.) The voices Plaintiff heard were of two strangers "constantly telling her 'terrible, personal things' about herself." (*Id.*) Plaintiff's medication regimen did not help. (*Id.*) The psychiatrist placed Plaintiff on suicide watch precautions and adjusted her medications. (*Id.* at 302.) While hospitalized, Plaintiff was diagnosed with recurrent and severe major depressive disorder with psychotic symptoms, generalized anxiety disorder, panic disorder, and insomnia. (*Id.* at 381.) Throughout her stay, Plaintiff appeared psychotic, tearful, depressed, anxious, easily distracted, and suffering from persecutory hallucinations. (*See, e.g.*, *id.* at 409–11, 423, 429, 439–40, 559.) Plaintiff's father explained she "would constantly play music or have on earbuds to help muffle her auditory hallucinations." (*Id.* at 433.) Plaintiff's father urged Plaintiff to move back in with him due to her hallucinations and inability to care for herself. (*Id.* at 433.) The hospital discharged Plaintiff on May 4, 2021. (*Id.* at 414.) Later that month, a therapist[4] evaluated and diagnosed Plaintiff with persistent depressive disorder. (*Id.* at 748–51.)

[3] Michael Lozovatsky, MD.

[4] Marcia Takach.

Plaintiff filed a DIB claim on August 4, 2022, alleging disability beginning on February 22, 2019, which she later amended to reflect an onset date of April 28, 2021, due to mental health issues, including anxiety and depression. (*Id.* at 18, 57, 181.) Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024. (*Id.* at 20.) During the adjudication, Plaintiff was a younger individual with a high school education who worked as a social worker and therapist. (*See id.* at 25–26.)

Plaintiff's claim was denied initially on April 5, 2023 (*id.* at 80), and upon reconsideration on July 27, 2023. (*Id.* at 92). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 97.) ALJ Trina Moore held a telephone hearing. (*Id.* at 18.) An impartial vocational expert[5] also appeared and testified. (*Id.*)

During the hearing, Plaintiff testified she was let go from her last job because of "mental issues, problems with depression and anxiety and hearing voices." (*Id.* at 40.) Plaintiff's hallucinations were "constant," and she was "very overwhelmed." (*Id.*) She attempted suicide to stop the voices. (*Id.* at 41.) Plaintiff testified that she experiences a range of side effects from her medications, including drowsiness, involuntary movements, and weight gain. (*Id.*) During her worst episode, Plaintiff heard voices twenty-four hours a day for several months. (*Id.* at 42.) The voices speak negatively about Plaintiff. (*Id.*) The voices simply appear; they have no trigger. (*Id.* at 43.) Plaintiff experiences depression and anxiety daily, preventing her from leaving her house and interacting with others. (*Id.* at 43–44.) Interacting with people fuels Plaintiff's anxiety to the point that she cannot think clearly. (*Id.* at 44.) So, Plaintiff avoids interacting with anyone in public. (*Id.* at 46.) Plaintiff has debilitating panic attacks. (*Id.* at 44.) Her depression causes her to isolate herself and leaves her unable to perform basic activities, including taking a shower. (*Id.*) Plaintiff

[5] Victor G. Alberigi.

moved back in with her family because she could not take care of herself. (*Id.* at 45.) She cannot focus or concentrate long enough to follow a conversation or a television show. (*Id.* at 46.) Plaintiff's hallucinations made her too distracted to work. (*Id.* at 47.)

The ALJ denied Plaintiff's claim on March 29, 2024. (*See* ALJ Op., ECF No. 5-2 at *19–28.[6]) The Appeals Council denied her request for review on January 3, 2025. (*See* Tr. at 1–4.) Having exhausted her administrative remedies, Plaintiff now seeks judicial review. *See* 42 U.S.C. § 405(g).

## II. <u>LEGAL STANDARD</u>

### A. Standard of Review

In reviewing DIB applications, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). The Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 564–65 (1988); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

[6] Pincites preceded by an asterisk (*) use ECF pagination.

Substantial evidence is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); *K.K.*, 2018 WL 1509091, at *4 ("[T]he district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." (alterations in original) (citation omitted)).

Nevertheless, the Third Circuit cautions that substantial evidence is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)); *see Cotter v. Harris* (*Cotter I*), 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record."). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Baker v. Colvin*, No. 12-7251, 2014 WL 2652938, at *4 (D.N.J. June 13, 2014) (citing *Schonewolf*, 972 F. Supp. at 284–85).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [their] analysis," the decision must nevertheless contain "sufficient development of

the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter I*, 642 F.2d at 705; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence." (internal citation omitted)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris* (*Cotter II*), 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter I*, 642 F.2d at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Schonewolf*, 972 F. Supp. at 284–85 (quoting *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

After reviewing the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119–20; *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. ex rel. Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22 (citation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B. Sequential Evaluation Process**

The Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At Step One, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At Step Two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [his or her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to Step Three.

At Step Three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least twelve months and is eligible for benefits. *Id.* § 404.1509. If not, the ALJ proceeds to Step Four.

At Step Four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e)–(f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At Step Five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. <u>DISCUSSION</u>

Here, at Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 28, 2021, the alleged onset date. (ALJ Op. at 3.)

At Step Two, the ALJ found that Plaintiff suffered from the following severe impairments: depression and anxiety. (*Id.*)

At Step Three, however, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 4.)

And at Step Four, the ALJ determined the following RFC,

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can never climb ladders, ropes, or scaffolds. She should avoid all exposure to hazards such as unprotected heights and

> moving mechanical parts. She retains the ability to carry out simple routine tasks on a continuous basis with simple instructions and simple work-related decisions. No assembly line or production rate pace work. No work in tandem. Occasional interaction with co-workers and supervisors. No constant interaction with the public in a customer service setting. She is able to tolerate occasional changes in the work setting and work processes.

(*Id.* at 5.) The ALJ also found Plaintiff unable to perform any past relevant work. (*Id.* at 8.)

At Step Five, relying on the testimony of the vocational expert, the ALJ found Plaintiff would be able to perform the requirements of representative occupations such as: Housekeeper (DOT 323.687-014), light, unskilled (SVP 2) work, with approximately 96,000 jobs nationally; Janitor (DOT 358.687-010), medium, unskilled (SVP 2) work, with approximately 39,000 jobs nationally; and Dishwasher (DOT 318.687-010), medium, unskilled (SVP 2) work, with approximately 32,000 jobs nationally. (*Id.* at 9–10.) The ALJ found the vocational expert's testimony consistent with the information contained in the Dictionary of Occupational Titles. (*Id.* at 10.)

Plaintiff contends that the ALJ wrongly deemed the opinions of Plaintiff's therapist, Winifred Cunningham ("Cunningham"), about Plaintiff's marked and extreme limitations "not supported by significant explanation" and erred in finding Cunningham's opinions only "somewhat persuasive." (*See* Pl.'s Br. at 9–12, ECF No. 8; ALJ Op. at 7–8.) The ALJ concluded Cunningham's opinions about Plaintiff's "marked and severe" limitations offered "[l]ittle explanation . . . other than completing checkboxes." (ALJ Op. at 7.) Thus, although Cunningham's opinion was based on her treating relationship with Plaintiff, the ALJ determined Cunningham's opinions were "not supported by significant explanation, nor [were] they consistent with mostly conservative treatment, and benign findings on mental status examination." (*Id.* at 8.)

Plaintiff further disagrees with the ALJ's finding that Plaintiff was purportedly stable when she was compliant with her medications. (Pl.'s Br. at 12–13; ALJ Op. at 8.) Plaintiff further posits

that the ALJ failed to address Cunningham's clinical findings and supporting explanations for Plaintiff's limitations.[7] (Pl.'s Br. at 10–12.) Plaintiff argues this was legal error because the ALJ must "explain how [she] considered the supportability . . . factor," which includes a discussion of the "objective medical evidence and supporting explanations presented by a medical source." (Pl.'s Br. at 10.)

In support, Plaintiff references Cunningham's May 6, 2022 medical source statement based on Plaintiff's depression, dysthymia, anxiety, and history of auditory hallucinations and suicide attempt; the fact that Cunningham treated Plaintiff on a weekly basis, providing different forms of therapy; Plaintiff's medications, which included Buspirone, Prozac, and Risperidone, which caused sedation, drowsiness, and fatigue; primary symptoms of difficulty concentrating, making decisions, and maintaining personal care; feelings of hopelessness, restlessness, agitation, loss of interest in activities, decreased energy, sleep and appetite disturbances, anxiety, and depression; and experiencing social isolation and panic attacks; and that Plaintiff's prognosis was deemed to be guarded. (*Id.* at 10–11; Tr. at 738–41.)

Plaintiff contends the ALJ's supportability analysis was legally deficient because it is conclusory and is not based on all relevant evidence provided in the opinion. (Pl.'s Br. at 13–14.) For example, Plaintiff notes that, (1) while hospitalized after her suicide attempt, Plaintiff's father explained that she "would constantly play music or have on earbuds to help muffle her auditory

---

[7] Cunningham checked boxes on a form indicating that (1) Plaintiff's chronic mental disorder is "serious and persistent"; (2) Plaintiff "relies on ongoing treatment, mental health therapy, psychosocial support, or a highly-structured setting to diminish the symptoms and signs of [her] mental disorder"; and (3) despite Plaintiff's "diminished signs and symptoms, [she] has demonstrated only marginal adjustment." (Tr. at 741.) Cunningham's form included a space to "describe additional reasons . . . why your patient would have difficulty working at a regular job on a sustained basis." (*Id.*) There, Cunningham added "[Plaintiff] struggles with day-to-day activities. Symptoms have kept her socially withdrawn as she avoids going out and is accompanied by family to appointments or doctors' visits. Social functioning is severely impacted." (*Id.*)

Cunningham reiterated her findings in another opinion rendered on January 24, 2024. (*See id.* at 868–71.)

hallucinations"; (2) Plaintiff's hallucinations and inability to care for herself is why he urged her to move back in with him; (3) her course was deemed "fluctuant"; and (4) even though her condition has waxed and waned, Cunningham still found Plaintiff unable to work due to severe anxiety and depression.[8] (*Id.* at 13.) Cunningham also found Plaintiff demonstrated only a marginal adjustment despite ongoing treatment. (*Id.*)[9]

Plaintiff then asserts the ALJ's consistency analysis fails to capture the severity of her impairments and the full extent of her limitations. (*Id.* at 14.) In particular, Plaintiff concludes it was error for the ALJ to rely on essentially normal findings to justify her conclusion that Cunningham's opinion was inconsistent with the record. (*Id.* at 14–15.) And Plaintiff claims the ALJ improperly mischaracterized the record to justify her erroneous conclusion. (*Id.* at 15.)

Finally, Plaintiff asserts that the ALJ falsely concluded "the evidence fails to establish the presence of the 'paragraph C' criteria." (ALJ Op. at 5.) In Plaintiff's telling, Cunningham twice found that the paragraph C criteria were satisfied. (*See* Tr. at 741, 871.)

In assessing the severity of Plaintiff's mental impairments, the ALJ considered whether Plaintiff satisfied the "paragraph B" criteria.[10] (ALJ Op. at 4.) "To satisfy the paragraph B criteria,

---

[8] Plaintiff cites *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 328 (E.D. Pa. 2022) ("Waxing and waning of mental impairments is common, and affects a claimant's ability to handle full-time employment.").

[9] Plaintiff further asserts her testimony is entirely consistent with Cunningham's opinions. (*See id.* at 13–14.)

[10] Paragraph B requires the following:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

   b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning:

   a. Understand, remember, or apply information (see 12.00E1); or

   b. Interact with others (see 12.00E2); or

the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning." (*Id.*) The ALJ found Plaintiff had a moderate limitation in understanding, remembering or applying information. (*Id.*) The ALJ noted Plaintiff's reports of fatigue, low energy, and amotivation and complaints of difficulty concentrating and focusing, remembering, and completing tasks. (*Id.*) The ALJ observed that Plaintiff could complete self-care tasks, but needed reminders to bathe and do her hair; that Plaintiff does not cook, but cleans and does laundry; that Plaintiff shops online and can manage money; and that Plaintiff watches television and reads. (*Id.*) Based on those observations, the ALJ also found Plaintiff had a moderate limitation in concentrating and persisting or maintaining pace, and in adapting or managing oneself. (*Id.*) The ALJ similarly found Plaintiff had a moderate limitation in interacting with others, noting Plaintiff's reported social isolation and panic attacks; her inability to handle stress or changes in routine; that she does not go out alone; shops online, watches television and reads. (*Id.*) Because Plaintiff's mental impairments caused only moderate limitations, the ALJ concluded Plaintiff failed to satisfy the "paragraph B" criteria.[11] (*Id.*)

The ALJ similarly concluded Plaintiff failed to satisfy the "Paragraph C" criteria because "the medical evidence of record fails to establish that [Plaintiff's] mental impairments have resulted in repeated episodes of decompensation, a residual disease process resulting in marginal

c. Concentrate, persist, or maintain pace (see 12.00E3); or

d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

[11] The ALJ also stated the limitations identified in the "Paragraph B" analysis were not an RFC assessment. (*Id.* at 5.) Rather, the Paragraph B criteria related to Steps Two and Three, whereas the RFC assessment at Steps Four and Five of the sequential evaluation process required "a more detailed assessment of the areas of mental functioning." (*Id.*)

adjustment, or a history of inability to function outside of a highly supportive living arrangement." (*Id.* at 5.)

In determining Plaintiff's RFC at Step Four, the ALJ considered (1) "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p"; and (2) "the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." (*Id.*)

In considering Plaintiff's symptoms, the ALJ followed a two-step process. First, the ALJ considered whether Plaintiff had an "underlying medically determinable physical or mental impairment[] . . . shown by medically acceptable clinical or laboratory diagnostic techniques" and "reasonably [] expected to produce [Plaintiff's] pain or other symptoms." (*Id.*) If so, the ALJ proceeded to evaluate "the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [Plaintiff's] work-related activities." (*Id.*) In this evaluation, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must consider other evidence in the record to determine if [Plaintiff's] symptoms limit the ability to do work-related activities." (*Id.*)

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (*Id.* at 6.) But the ALJ found Plaintiff's statements about the intensity, persistence and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

The ALJ noted Plaintiff alleged she could not work due to symptoms related to mental illness and history of anxiety and depression, with on and off treatment throughout her adult life.

(*Id.*) Plaintiff complained she had difficulty focusing and paying attention, issues completing tasks in a timely manner and being in social situations; auditory hallucinations when not on medication; and isolation, amotivation, panic attacks, low energy, fatigue, irritability, restlessness, and feelings of hopelessness. (*Id.*)

Addressing the medical records, the ALJ referenced Plaintiff's hospitalization in April 2021 (the amended alleged onset date) for auditory hallucinations when she was not taking her medication, a suicide attempt, and depression. (*Id.*) The ALJ noted that upon discharge on May 4, 2021, Plaintiff appeared "alert and oriented, calm and cooperative, with appropriate affect," and "well-groomed, socializing with peers on the unit, and participat[ing] in group therapy." (*Id.*) Plaintiff had a May 24, 2021 appointment where she reported spending time watching television, movies, reading and listening to music. (*Id.*) Plaintiff's mental status examination revealed "benign findings, including cooperative attitude, normal speech, stable mood, full and appropriate affect, intact thought process, intact memory, attention and concentration, intact association, no homicidal or suicidal ideation, and fair insight and judgment." (*Id.*) The ALJ noted Plaintiff had not had any other psychiatric hospitalizations, or emergency room visits due to her symptoms. (*Id.*) Plaintiff's treatment notes between 2021 through 2023 similarly offered no complaints and normal psychiatric findings. (*Id.*) Moreover, during visits between 2021 and 2023, Plaintiff tested negative for "aggressive behavior, anger, anxiety/panic attacks, crying spells, decreased concentration, delusions, depression, hallucinations-auditory, sensory hallucination, hallucinations-visual, insomnia, memory loss, mood changes, stress, suicidal ideation, suicidal tendencies and suicidal thoughts." (*Id.*)

The ALJ found the opinion of Plaintiff's prior treating social worker, Ms. Dolce ("Dolce"), not persuasive. (*Id.* at 6–7.) Dolce saw Plaintiff between February 2018, and March 2019, for

individual psychotherapy in connection with Plaintiff's extreme anxiety and depression. (*Id.* at 6.) Dolce indicated Plaintiff suffered from panic attacks; had difficulty keeping pace with a demanding and stressful job; had difficulty being organized and following through on any effort to secure employment or engage in social interactions; and due to her anxiety, her ability to focus on a task was very limited. (*Id.*) Yet Dolce did not issue an opinion or function-by-function assessment of Plaintiff's abilities and limitations. (*Id.* at 7.) And Dolce last treated Plaintiff more than two years before Plaintiff's alleged onset date. (*Id.*) Dolce acknowledged she had "no current knowledge of [Plaintiff's] emotional or psychological status." (*Id.*)

The ALJ turned to the opinion of consultative examiner Dr. Harold Goldstein ("Goldstein"). (*Id.*) Plaintiff met with Goldstein for an evaluation in April 2023. (*Id.*) Plaintiff described having issues with pacing and task completion because she struggled to focus and maintain attention; reported a recent and extended episode of constant hallucinations and depression; described her life as terrible; living with her parents, she felt isolated, and was not motivated to speak to anyone or do anything; her mood was depressed; and her affect was limited. (Tr. at 841–43.) Goldstein diagnosed Plaintiff with major depressive disorder with psychotic features. (*Id.* at 843.) Goldstein also noted Plaintiff was a good historian and answered all questions asked of her; Plaintiff's speech was normal and did not evidence any psychomotor impairment; and Plaintiff's mood was depressed and her affect limited. (ALJ Op. at 7.) Goldstein found no evidence of: a thought disorder, as Plaintiff was coherent and logical, or delusional ideation, as Plaintiff did not appear to be responding to internal stimuli during the interview. (*Id.*) Goldstein found Plaintiff had "adequate social judgment"; was "oriented to time, place, and person"; recalled "two of three words five minutes after they were initially presented"; counted "backwards from 100 by 3 offering 10 consecutive correct responses"; recalled "five digits forward and three digits

backward"; answered two of three basic arithmetic word problems correctly; listed "the months of the year backwards without making an error"; spelled "several five letter words backwards"; had a good "fund of knowledge"; and had "intact" abstract reasoning, but experienced some difficulty recalling information from several days before. (*Id.*) Dr. Goldstein did not render a medical opinion or functional assessment. (*Id.*)

The ALJ considered state agency psychological consultant Dr. Liberant's ("Liberant") April 2023 opinion. (*Id.* at 7.) Liberant found Plaintiff "had no understanding and memory limitations, and no adaptation limitations." (*Id.*) Liberant found Plaintiff was "not significantly limited in her ability to carry out very short and simple instructions, perform activities within a schedule, sustain an ordinary routine without special supervision, make simple work-related decisions, interact appropriately with coworkers, and maintain socially appropriate behavior." (*Id.*) Liberant further indicated Plaintiff was only moderately limited in her ability to "carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others, perform at a consistent pace, and interact appropriately with supervisors and the public." (*Id.*) Liberant concluded Plaintiff could follow simple instructions, sustain mental pace and persistence, concentrate and maintain attention for simple repetitive tasks during a normal workday and adapt to work like settings. (*Id.*) In July 2023, another state agency psychological consultant[12] affirmed Liberant's assessment. (*Id.*)

The ALJ then considered Cunningham's January 2024 medical source statement indicating Plaintiff had marked limitations in most areas of functioning, including understanding, remembering, and applying information, concentrating, persistence, and maintaining pace, adapting in the workplace, and managing oneself in the workplace. (*Id.*) Cunningham's statement

[12] Dr. Soto.

further indicated that Plaintiff would be absent more than four days a month; and that Plaintiff had extreme limitation in interacting with others. (*Id.*) The ALJ, however, noted Cunningham offered "[l]ittle explanation . . . other than completing checkboxes." (*Id.*) Cunningham had completed the same form with the same findings in May 2022. (*Id.*)

The ALJ summarized the medical opinions and prior administrative medical findings as follows:

> The opinions of the state agency psychological consultants, Drs. Liberant and Soto are persuasive, based on their program knowledge. *While they did not have the opportunity to examine [Plaintiff], they provided explanations for their opinions with reference to the medical record, and their opinions are consistent with mostly conservative mental health treatment, [Plaintiff's] wide range of activities of daily living, and benign mental status examinations in treatment documentation.* While rendered earlier during the period at issue, there is no subsequent medical evidence that would support greater restrictions.
>
> The opinions of [Cunningham] are only somewhat persuasive, based on her treating relationship with [Plaintiff]. However, *the marked and extreme limitations are not supported by significant explanation, nor are they consistent with mostly conservative treatment, and benign findings on mental status examination. Treatment notes reveal stability and benign findings when [Plaintiff] is compliant with medication.*
>
> The opinions of the state agency medical consultants finding no severe physical impairment are persuasive, based on their program knowledge. While they did not have the opportunity to examine [Plaintiff], they provided explanations for their opinions with reference to the medical record, and *their opinions are consistent with a lack of significant medical treatment for any physical impairment, [Plaintiff's] wide range of activities of daily living, and benign examinations in treatment documentation.*

(*Id.* at 8.)

Here, Plaintiff contends that the ALJ wrongly concluded Cunningham's marked and extreme limitations were "not supported by significant explanation" and erred when finding Ms. Cunningham's opinions only "somewhat persuasive." (Pl.'s Br. at 9–10.) As noted above, the ALJ found that the marked and extreme limitations lacked significant explanation and were inconsistent

with mostly conservative treatment, and benign findings on mental status examination. In support, the ALJ cited treatment notes revealing stability and benign findings when the claimant is compliant with medication. (Admin. R. at 25.) The ALJ found Drs. Liberant and Soto persuasive, because they provided explanations for their opinions with reference to the medical record, and their opinions are consistent with mostly conservative mental health treatment, the claimant's wide range of activities of daily living, and benign mental status examinations in treatment documentation. (*Id.*)

It is Plaintiff's burden to prove disability. 20 C.F.R. § 404.1512. Plaintiff bears the burden of proof at steps one through four of the sequential evaluation process, including the RFC determination. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 117 (3d Cir. 2020) ("[C]laimant bears the burden of establishing her RFC . . . ."). Plaintiff's description of her symptoms, however, standing alone, is never sufficient to establish an impairment or disability. *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."); *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) ("[A]n ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . ."). Despite objective evidence of record that may show a medically determinable impairment, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009); *see also* 20 C.F.R. § 404.1521. Rather, an impairment must be accompanied by functional limitations severe enough to preclude a claimant from working. *See Jones v. Sullivan*, 954 F.2d 125, 128–29 (3d Cir. 1991). An individual is not required to be symptom-free or experiencing no discomfort to perform work. *See Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986).

"A treating physician's opinion is entitled to great weight when there is a substantial

longitudinal treatment period, the opinion is well-explained and well-supported, and the opinion is consistent with other evidence." *Myers v. Comm'r of Soc. Sec.*, 684 F. App'x 186, 192 (3d Cir. 2017). "While contradictory medical evidence is required for an ALJ to reject a treating physician's opinion outright, such an opinion may be afforded 'more or less weight depending upon the extent to which supporting explanations are provided.'" *Id.* (citation omitted). When "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Id.* (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). Moreover, "an ALJ is permitted to–and in fact required to–consider the nature of a claimant's treatment history based on the evidentiary record." *Clarke v. Comm'r of Soc. Sec.*, No. 23-1484, 2024 WL 4252054, at *1 n.1 (W.D. Pa. Sept. 20, 2024)

Like medical reports, "the ALJ must also consider and weigh all of the non-medical evidence before him [or her]." *Burnett*, 220 F.3d at 122. "Although allegations of pain and other subjective symptoms must be consistent with objective medical evidence, the ALJ must still explain why he [or she] is rejecting the testimony." *Id.*; *see also Stockett v. Comm'r of Soc. Sec.*, 216 F. Supp. 3d 440, 463 (D.N.J. 2016) (noting that "while the ALJ is not required to discuss 'every tidbit of evidence included in the record,' he must consider all pertinent medical and non-medical evidence and 'explain [any] conciliations and rejections.'" (alteration in original) (citations omitted)).

Here, the ALJ considered the report of Plaintiff's father as a non-medical source opinion and found Plaintiff's father has a vested interest in his daughter obtaining benefits. (ALJ Op. at 8.)

The revised regulations set out a "reasonable articulation" standard for evaluating opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg.

5844, 5858 (Jan. 18, 2017); 20 C.F.R. § 404.1520c (setting forth articulation process for evaluating evidence). The decision should allow a reviewing court "to trace the path of the adjudicator's reasoning," but need not explain how each piece of evidence was considered. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5858.[13]

Based on the vocational expert's testimony, the ALJ concluded that, considering the Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and found Plaintiff not disabled under the framework of section 204.00 in the Medical-Vocational Guidelines. (ALJ Op. at 10); *See Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 97 (3d Cir. 2004) ("Vocational expert testimony constitutes substantial evidence . . . .").

The ALJ's fact-finding is subject to a deferential standard of review. *Biestek*, 587 U.S. at 103. The RFC is an administrative finding, not a medical opinion, which the ALJ formulates exclusively based on the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). To the extent an ALJ finds some of a claimant's limitations unsupported, the ALJ may exclude them from the RFC assessment. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) ("[T]he ALJ need only include in the RFC those limitations which he finds to be credible.").

[13] Under the "reasonable articulation" standard, an ALJ considers medical opinions when assessing the RFC, but will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Rather, the ALJ assesses the persuasiveness of medical opinions, and in doing so, need only explain how she considered the "most important" factors of consistency and supportability. 20 C.F.R. § 404.1520c(b)(2)–(3). In addressing a medical opinion, the ALJ "may" comment on other factors, but generally has no obligation to do so absent special circumstances, which do not exist here. 20 C.F.R. § 404.1520c(b)(2)–(3). Relevant here, "supportability" is the extent that a medical source presents "relevant objective medical evidence and . . . explanation" that supports the medical opinion; and "consistency" is the extent to which the medical opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(1)–(2).

Moreover, the ALJ is given great discretion in evaluating a claimant's subjective complaints, and his findings are entitled to great deference. *See Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014). It is the ALJ who "has seen the hearing up close." *Biestek*, 587 U.S. at 108. Consequently, the ALJ may discount a claimant's subjective complaints that are unsupported by the evidence. *See* 20 C.F.R. § 404.1529(c)(4). So long as substantial evidence supports the ALJ's conclusion, the Court should afford it "great deference." *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App' x 183, 189 (3d Cir. 2007). The ALJ's credibility determination has thus been described as "virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App' x 678, 681 (3d Cir. 2015).

Accordingly, the ALJ's articulation requirements are not onerous. To facilitate substantial evidence review, the Supreme Court provided that an agency's decision need not be "elaborate or even sophisticated." *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 302 (2015). Instead, "a sentence or short paragraph would probably suffice." *Cotter II*, 650 F.2d at 482. Consistent with these principles, the Third Circuit recently held that the ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor," and may "weave [their discussion of] supportability and consistency through [his or] her analysis." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). Moreover, the ALJ need not accept every part of a medical opinion they find "persuasive." *See Irwin v. Comm'r of Soc. Sec.*, No. 19-5108, 2020 WL 1888958 at *3 (E.D. Pa. Apr. 16, 2020) (citing *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014)); 20 C.F.R. § 404.1520c(a); *see also Binner v. Kijakazi*, No. 22-122, 2023 WL 35328, at *11 (M.D. Pa. Jan. 4, 2023) ("[S]imply finding an opinion persuasive does not mean that the ALJ must accept the persuasive medical opinion wholesale").

Here, the ALJ's analysis comports with these standards. A review of the ALJ's decision against the record evidence shows the ALJ followed the governing regulations, analyzed the

appropriate regulatory factors, and articulated findings with sufficient clarity to allow for meaningful judicial review. (*See, e.g.*, ALJ Op. at 3–10.) Accordingly, the ALJ's discussion of the evidence and findings constituted substantial evidentiary support for the RFC, medical source statements, and the subjective complaint analyses. (*Id.*)

Plaintiff's differing view of the evidence does not mean the ALJ lacked substantial evidence to make his or her decision. Substantial evidence requires "more than a mere scintilla" of support in the record. *See Biestek*, 587 U.S. at 103; *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) ("The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision."). To override the agency's factual finding, it is not enough that Plaintiff points to evidence that "*supports*" a contrary conclusion: the evidence must "*compel*[]" it. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (emphasis original). Plaintiff has not identified any evidence compelling a contrary result. Accordingly, here, the Court must find remand or reversal is not warranted under the standard of review.

## IV. CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

**IT IS SO ORDERED.**

**DATED: 9/16/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**